No. 29,162.

THE STATE OF KANSAS, *Appellee*, v. J. R. McMANIS, *Appellant*.

(284 Pac. 616.)

Opin-
ion denying a rehearing filed February 8, 1930. (For original opinion of
affirmance see *ante*, p. 376, 282 Pac. 588.)

*Burt Comer, Harold H. Malone* and *Forest V. McCalley,* all of Wichita, for
the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general,
and *Bert E. Church,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant asks a rehearing on the ground the court
did not consider certain of defendant's assignments of error. De-
fendant is mistaken. The original opinion concluded as follows:

"Defendant makes numerous complaints of the proceedings. The complaints
have all been examined. Some are trifling, and none is of such substantial
merit as to require ceremonious treatment." (p. 378.)

In the petition for rehearing defendant requests an expression
of the court's views respecting three subjects not given ceremonious
treatment.

One assignment of error was that the district court did not in-
struct the jury on defendant's theory of the case. Defendant re-
quested the court to instruct the jury as follows:

"The defendant, J. R. McManis, contends that all the liquor in question
was owned, controlled, and handled by Henry Kampling and/or R. L. Hunter,
and that the only liquor he had was when same was given him by Henry
Kampling and/or R. L. Hunter, to drink as much as he desired and return
same to the giver. If you find from the evidence that the contention of the
defendant is true, then you cannot find the defendant guilty on any count
of the information, and your verdict should be 'not guilty' on each, every and
all of said counts in the information. . . . There is some testimony to the
effect that the defendant was given intoxicating liquors, to drink as much' as
he desired and to return the remainder to the giver; that the defendant did
take the intoxicating liquor, and when he had finished drinking, he returned
the remainder to the giver. In this connection I say to you that, if you find
from the evidence that the bottle containing the said liquor was given to the

defendant for the purpose of allowing him to drink from the same as much as he desired, and to return the remainder to the giver, that then and in that case the said liquor was not in the possession of the defendant within the meaning of the law as set forth in these instructions, and you should so find."

Defendant testified his wife had been in a hospital, and about 11 o'clock in the forenoon, while he was getting dinner for his children, Kampling came to his house and asked him if he would like a drink (of liquor). Defendant did not know Kampling, and had seen him but once, the day before. Defendant was pretty busy, and declined the invitation. A half hour later Kampling telephoned defendant to come to a grocery store, and defendant said he would be there in five minutes. Defendant asked Roberts if Roberts would drive him to the grocery store. At the grocery store Kampling. introduced Hunter. Hunter invited defendant and Roberts to go out into the country and take a drink. Kampling told defendant and Roberts to meet him west of town on highway No. 12, and Kampling said he would give defendant and Roberts a drink. Roberts and defendant drove out on highway No. 12 to a stone house, turned around, and met Kampling and Hunter. Kampling gave defendant a drink of liquor out of a quart bottle. Defendant handed the bottle to Roberts, who took a drink. Roberts handed the bottle back to Kampling. About 3:30 or 4 o'clock in the afternoon of the same day Kampling again called defendant to the grocery store, and the same four men went out on the same highway, just to have a little party. This time defendant testified they drank from a pint bottle given them by Kampling. After defendant and Roberts had taken a drink, Hunter told defendant he was under arrest. Defendant said Hunter was a "fine guy" to frame them like that, and backed Hunter down the road about 100 feet. Defendant then submitted to arrest. With Hunter keeping his gun on defendant, defendant drove around the section and back to the place of arrest, and soon afterward the sheriff arrived.

The state's evidence disclosed the forenoon's visit to defendant's house, the first telephone call, the meeting at the grocery store, and the forenoon trip to the country, when the quart of liquor was delivered by defendant to Kampling for which Kampling paid defendant $5. The state's evidence also disclosed the second telephone call, the second meeting at the grocery, and the second trip to the country, when the gallon was delivered by defendant to Hunter, who paid defendant $15 for it. While defendant was threat-

ening Hunter, Hunter called to a passer-by and told him to send the sheriff out. Defendant did not mention the gallon jug of liquor which the sheriff took into his possession and produced at the trial, and in place of solicitation of defendant by Kampling and Hunter to sell liquor to them, and delivery to them of purchased liquor, defendant merely substituted solicitation to take a drink, and drinking.

The issues under the sales counts were whether defendant sold and delivered, first the quart and then the gallon of liquor. There was no need for the court to instruct the jury with reference to what constitutes a sale, and the very simple question was sale or no sale. The jury had heard the testimony, and there was no more reason for the court to call specific attention to the testimony on defendant's side than there was for the court to call specific attention to the testimony on the state's side. Two of the counts in the information were for possession. The court instructed the jury with respect to possession. The question was, Did defendant go out into the country to the place where he kept his liquor hidden, get the liquor, and deliver it to Kampling and Hunter, at an appointed meeting place, or did they all go out there to drink? and the instructions on the subject of holding a bottle while taking a drink, requested by defendant, could have had no effect except to divert the minds of the jurors from the true issue. Besides that, holding a bottle while taking a drink was not involved in two other counts on which defendant was tried—transportation of liquor and maintenance of an automobile liquor nuisance. The jury found defendant guilty on both these counts, which disposed of defendant's fabrications, and if the requested instructions had been proper, the fact that they were not given is of no consequence.

On cross-examination defendant admitted he had previously pleaded guilty to violation of the liquor law. The court asked the county attorney why defendant was charged with a misdemeanor instead of a felony, and said the court did not want to try defendant for a misdemeanor under the circumstances. The county attorney then explained that defendant's plea of guilty was entered in a police court, and the court directed the county attorney to proceed. The court's inquiry was a proper one. If censure of anybody was implied, it was of the county attorney, and not of defendant, the court intimated nothing respecting strength of the state's case or defendant's guilt or innocence, and defendant's claim of prejudice to him is imaginary.

The form of verdict which the court sent to the jury room was a poor one; but defendant did not object to it, and the manner in which the jury dealt with it showed conclusively the jury understood the form, and what was required of them.

Having complied with defendant's request, the court concludes as before.

The petition for rehearing is denied.